UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERCY LEE FERGUSON,

       Plaintiff,                      Civil Action No. 11-15072

v.                                  HON.  DAVID M. LAWSON
                                  U.S. District Judge
                                  HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Percy Lee Ferguson brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #14] be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED [Doc. #9] to the extent that the case be remanded for further administrative proceedings pursuant to Sentence Four of 42 U.S.C.  § 405(g).

-1-

## PROCEDURAL HISTORY

On December 1, 2009, Plaintiff filed an application for SSI, alleging disability as of September 1, 1989[1] (Tr. 100-103).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on March 10, 2011 in Detroit, Michigan (Tr. 497). Administrative Law Judge ("ALJ") Roy Roulhac presided (Tr. 497).  Plaintiff, represented by Joshua Moore, testified (500-508), as did Vocational Expert ("VE") Stephanee Leech (Tr. 508-513).  On March 24, 2011, ALJ Roulhac found Plaintiff not disabled (Tr. 21-22).  On September 22, 2011, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed suit in this Court on November 16, 2011.

## BACKGROUND FACTS

Plaintiff, born September 4, 1963, was 47 when the ALJ issued his decision  (Tr. 22, 100).  He received a GED and worked previously as a general laborer, press operator, and sales representative (Tr. 144, 148).  He alleges disability as a result of an HIV positive diagnosis, hypertension, an enlarged prostate, and kidney disease (Tr. 143).

### A.    Plaintiff's Testimony

 Plaintiff described his current condition as "tired and fatigued" (Tr. 500).  He reported that due to medication side effects  and pain, he quit his job as a janitor in August, 2010 and had not worked since (Tr. 501).  He stated that the job required him to dust, sweep, and mop, but did not require significant lifting (Tr. 501).  Plaintiff reported that in 2001, he

---

[1]He later amended the onset date to December 1, 2009 (Tr. 169).

also worked as a subcontractor for a cable provider (Tr. 502).

Plaintiff denied the use of a cane or walker (Tr. 503).  He alleged nightmares, stating that as a result, he was obliged to take Sinequan to regulate his sleep (Tr. 504).  He stated that he slept "all the time" as a result of kidney stones, an enlarged prostate, a tumor in his groin, arthritis of the spine, hypertension, sinus allergies, HIV, and psychotropic medication side effects (Tr. 505).  He testified that arthritis and the tumor prevented him from heavy lifting and standing or sitting for long periods (Tr. 504).  Plaintiff stated that he could stand for up to 15 minutes and sit for "a few" (Tr. 505).  He reported that he was unable to walk for more than two blocks (Tr. 505).  He denied limitations in self-care activities (Tr. 506).

Plaintiff stated that he had not taken illicit drugs for seven years (Tr. 506).  He alleged that his fatigue stemmed from being HIV positive and his use of Sinequan and Norco (Tr. 506).  He stated that he had been HIV positive for 20 years, but did not experience any symptoms other than fatigue (Tr. 506).  He alleged that on a scale of one to ten, he regularly experienced level "seven to eight" back pain (Tr. 507).  In response to questioning by his attorney, Plaintiff stated that he was afraid to sleep because of nightmares (Tr. 507).  He also alleged problems concentrating (Tr. 508).  He stated they he could usually control his anger but on occasion, "explode[d]" (Tr. 508).

B.    Medical Evidence[2]

---

[2]Medical records predating the amended alleged onset date of December 1, 2009 by more than one year have been reviewed but are omitted from the present discussion.

-3-

2:11-cv-15072-DML-RSW   Doc # 15   Filed 01/23/13   Pg 4 of 18   Pg ID 592

## 1. Treating Sources

In May, 2009, Plaintiff was diagnosed with an enlarged prostate (Tr. 258-260).  The same month, treating notes state that Plaintiff was being monitored for HIV but was not receiving medication (Tr. 354).  A physical exam was otherwise normal (Tr. 355).  The following month, Plaintiff complained of sleep disturbances, noting that he was currently applying for a second job (Tr. 369).  The following month, Plaintiff reported that he continued to work two jobs (Tr. 375).  In September, 2009, Plaintiff sought treatment for vertigo related to symptoms of a sinus condition (Tr. 242).  The same month, he requested narcotics for pain relief (Tr. 379).  Carl Christensen, M.D. offered instead to prescribe non-narcotic medications (Tr. 379).  In November, 2009, Plaintiff sought emergency treatment after fainting (Tr. 266).  He was admitted to the hospital after being diagnosed with kidney failure (Tr. 233).  Imaging studies of the chest were unremarkable (Tr. 281).  The same month, an ultrasound of the kidneys showed the presence of kidney stones (Tr. 280). January, 2010 psychosocial intake notes by counselor Donna S. Townsley include Plaintiff's family history, including childhood physical and emotional abuse, substance abuse, gang membership, and incarceration (Tr. 316-323).  Evaluation notes state that Plaintiff appeared well groomed and was "easily approachable, cooperative and respectful" (Tr. 321).  He appeared focused with a logical thought process (Tr. 321).  Townsley assigned him a GAF of 60[3] (Tr. 323).  May, 2010 counseling notes state that Plaintiff experienced fear while

---

[3]

A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric

riding buses or traveling through certain sections of the city (Tr. 324). Townsley noted that he was participating in HIV support groups (Tr. 324). Treatment notes from the same month note that the kidneys were "fine" (Tr. 434). In August, 2010, Plaintiff sought emergency treatment for a swollen tongue (Tr. 471). Plaintiff was cooperative with appropriate mood and affect (Tr. 488). He was discharged after his symptoms resolved (Tr. 466). In December, 2010, Plaintiff reported depression (Tr. 404). Psychiatrist John Head, D.O., noted that Plaintiff demonstrated good grooming and punctuality and was fully oriented (Tr. 404). Dr. Head assigned Plaintiff a GAF of 48, noting a major depressive disorder, single episode, severe, with psychotic features[4] (Tr. 404). The same month, imaging studies of the lumbar spine showed mild degenerative arthritis in the hip joints but no other abnormalities (Tr. 457). In February, 2011, Plaintiff underwent a cystourethroscopy to aleviate urinary symptoms (Tr. 423). The procedure was performed without complications (Tr. 423-424).

### 2. Non-treating Sources

In February, 2010, Atul C. Shah, M.D. performed a consultive examination of Plaintiff on behalf of the SSA (Tr. 300-307). Dr. Shah noted that Plaintiff had recently

---

Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

[4]  A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

finished a five-year prison stint and had been incarcerated for a total of over 20 years for various crimes (Tr. 300).  Plaintiff reported that he was diagnosed with HIV in 1989 and had not been given medication, but that his condition was being monitored (Tr. 300). He stated that he had to use the bathroom frequently due to an enlarged prostate (Tr. 301).  He opined that medicine for hypertension was causing his kidneys to malfunction (Tr. 301).  Plaintiff reported depression as a result of the HIV diagnosis and his lengthy prison stints (Tr. 301). Dr. Shah observed that Plaintiff had a moderately restricted range of sacro-lumbar movement and a slow but normal gait (Tr. 302, 304).  The rest of the examination was unremarkable (Tr. 302-303).  Dr. Shah found limitations in walking, standing, and climbing (Tr. 302).

The following month, Pretecia Collins performed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff was capable of lifting 50 pounds occasionally and 25 frequently; standing, sitting, and walking for six hours in an eight-hour workday; and pushing and pulling without limitation (Tr. 308).  Collins found the absence of postural, manipulative, visual, communicative, or environmental limitations (Tr. 310-312).  She also found that Plaintiff's claims were only partially credible, noting that in his Activities of Daily Living ("ADLs") he admitted to being able to lift 50 pounds and perform a wide range of household chores (Tr. 313).  She concluded that Plaintiff retained "the mental and physical capacity to perform his past work as indicated in the national economy" (Tr. 347).

In May, 2010, Atul C. Shaw[5] performed a psychiatric evaluation of Plaintiff on behalf of the SSA (Tr. 325-327). Plaintiff reported that his depression was becoming progressively worse (Tr. 325). Dr. Shah noted the absence of mood swings or a obsessive compulsive disorder (Tr. 325). Plaintiff reported the current use of Elavil (Tr. 326). Dr. Shah found that Plaintiff would be "subject to relapses in view of the lack of psychiatric intervention" (Tr. 327). He assigned Plaintiff a GAF of 60 (Tr. 327).

The following month, a Psychiatric Review Technique by Daniel Blake, Ph.D. found the presence of affective, anxiety-related, and substance abuse disorders (Tr. 333, 336, 338, 341). Based on the treating and consultive records, Dr. Blake found that Plaintiff experienced moderate limitations in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 343). The same day, Dr. Blake completed a Mental Residual Functional Capacity Assessment, finding that Plaitniff experienced moderate limitations in the ability to maintain attention and concentration for extended periods, work in coordination with others, complete a normal workweek without psychologically based interruptions, behave appropriately with the general public/supervisors, respond appropriately to changes in the work setting, and make realistic goals (Tr. 330). Dr. Blake concluded that Plaintiff was nonetheless capable of "simple work activity" (Tr. 331).

---

[5]It appears that this physician is the same Atul C. Shaw who performed the February, 2010 physical examination of Plaintiff.

### C.       Vocational Expert Testimony

VE Stephanee Leech classified Plaintiff's former work in sales for a cable company

as semiskilled at the light exertional level and cleaner (as performed), unskilled/light[6] (Tr.

509).  The ALJ then posed the following question to the VE, taking into account Plaintiff's

age, education, and work background:

> Assume for . . . this hypothetical, the individual could perform at the sedentary
> exertional level that requires lifting not more than ten pounds and sitting six
> hours and standing and walking two.  This hypothetical person would need a
> sit/stand option with occasional ability to climb ramps and steps, balance, stoop,
> kneel crouch and crawl, who should avoid unprotected heights, and be limited
> to performing unskilled work.  Are there jobs that such an individual could
> perform . . . . Could . . . this hypothetical person not perform claimant's past
> relevant work?  Are there jobs that such a person could perform? (Tr. 510).

The VE responded that given the above limitations, the individual could work as an

assembler,  Dictionary of Occupational Titles ("DOT") code 713.687-018 (1,800 jobs in the

regional economy); office clerk, DOT code 205.367-030 (2,500); and packer, DOT code

726.687-030 (Tr. 510).  The VE stated that her testimony pertaining to the sit/stand option

was not based on the information found in the DOT, but rather, on her own professional

---

[6]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10
pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and
small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than
50 pounds at a time with frequent lifting or carrying of objects weighing up to 25
pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a
time with frequent lifting or carrying of objects weighing up to 50 pounds.

experience (Tr. 510).  In response to questioning by Plaintiff's counsel, the VE stated that the need to leave work one day a week because of anger management problems would preclude all gainful employment (Tr. 512-513).

### D.  The ALJ's Decision

Citing Plaintiff's medical records, ALJ Roulhac found the severe impairments of "obesity, chronic low back pain; mild degenerative joint disease; early degeneration in bilateral hip joints from arthritis; pelvic pain, major depressive disorder, single episode with psychotic features; polysubstance dependence in remission; post traumatic stress disorder; and asymptomatic HIV infection," finding however that none of the conditions met or medically equaled one of the impairments found in 20 C.F.R. Part 404 Appendix 1 Subpart P (Tr. 14-15).  Citing the Psychiatric Review Technique, the ALJ found that Plaintiff experienced moderate difficulties in concentration, persistence, or pace, and mild difficulties in social functioning and activities of daily living (Tr. 15-16).

The ALJ found that Plaintiff retained the Residual Functional Capacity to perform sedentary work with the following limitations:

> [C]laimant requires a sit/stand option at the workstation while remaining at the workstation (option means that the individual can sit/stand at will while performing their assigned duties); the claimant can stand and/or walk (with normal breaks) for a total of 2 hours in an 8-hour workday; the claimant can sit (with normal breaks) for a total of 6 hours in an 8-hour workday; the claimant can occasionally climb ramps and steps, balance, stoop, and kneel; avoid concentrated exposure to unprotected heights; limited to simple tasks (Tr. 16).

Adopting the VE's job numbers, the ALJ found that although Plaintiff was unable to perform

his former jobs, he could work as an assembler, office clerk, or packer (Tr. 20-21).

The ALJ discounted Plaintiff's professed degree of functional limitation, citing July, 2009 treating notes showing the ability to lift up to 50 pounds,  sit for one hour, and walk or stand for two hours (Tr. 17).  He noted that Plaintiff took his hypertension medication sporadically (Tr. 17).  The ALJ cited June, 2010 treating notes stating that Plaintiff was currently holding two jobs (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

884 F.2d 241, 245 (6th Cir. 1989).


## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).


## ANALYSIS

Two errors in the administrative proceeding require remand–the ALJ's failure to include a proper sit/stand option in his hypothetical question, and his failure to adequately

account for Plaintiff's mental impairments.[7]

## A. Sit/Stand Option

Plaintiff argues first that the ALJ failed to appreciate that the inclusion of a sit/stand option significantly eroded the job base. *Plaintiff's Brief* at 10-11, *Docket #9*.   Plaintiff is correct to the extent that the sit/stand findings warrant remand.   A sit/stand option, stated either in the RFC or hypothetical question should include the required frequency of position changes. *See* SSR 96-9,1996 WL 374185, *7 (July 2, 1996)("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing").   The imposition of a sit/stand *at will* requirement, allowing the individual to change positions at any time rather than prescribed intervals, is the most restrictive of all the sit/stand

_____

[7] Plaintiff makes several additional, but brief arguments for remand.  He argues that the ALJ did not address limitations as a result of obesity as required by SSR 02-01p. However, the ALJ acknowledged Plaintiff's obesity, both at Step Two of his analysis, and later finding that obesity "exacerbates his ability to perform basic work activities" (Tr. 15).  The ALJ sufficiently addressed this impairment by limiting Plaintiff to sedentary work accompanied by a number of postural limitations (Tr. 15).

Likewise, I disagree with Plaintiff's assertion that the credibility determination was inadequate or that the ALJ "cherry-picked" the record for evidence of non-disability. The ALJ noted that Plaintiff's claims were undermined by evidence showing that he was holding two jobs in the summer of 2009 and could handle his own finances (Tr. 15, 19). The ALJ noted that Plaintiff had admitted in July, 2009 that he was capable of lifting 50 pounds and denied any joint problems in May, 2010 (Tr. 17).

Finally, I agree with Defendant's contention that Plaintiff's last argument is "confusing."  Plaintiff, citing SSR 96-8p, argues that the ALJ erred by failing to mention the frequency of treatment.   However, SSR 96-8p does not state that the ALJ must discuss the frequency of treatment, but rather, *consider* the frequency of treatment when composing the RFC.  1996 WL 374184, *5.  While Plaintiff seems to argue that the ALJ did not include an adequate discussion of the objective findings, daily activities, or treating records, he is short on the particulars of why the ALJ's analysis was insufficient.

-12-

limitations.

The question to the VE included a "sit/stand option" but it did not include the frequency required for position changes, *i.e.* 30 minutes, 15 minutes, at will, etc. (Tr. 510). However, although the hypothetical question contained only a generic sit/stand option, the RFC found in the administrative opinion stated that Plaintiff was limited to "a sit/stand option at the workstation while remaining at the workstation (option means that the individual can sit/stand at will while performing their assigned duties)" (Tr. 16).   While it is possible that the VE interpreted the hypothetical question to state that the individual required the ability to change position at any time, the hypothetical question did not include the "at will" limitation found in the RFC.

Further, the VE's testimony contains no indication that she inferred an "at will" sit/stand restriction in the hypothetical question.  I disagree with Defendant's contention that an "at will" restriction was implied by Plaintiff's earlier testimony that he needed to change positions every 10 to 15 minutes. *Defendant's Brief* at 6, *Docket #14* (citing Tr. 505).  This Court has no way of knowing if the VE's job numbers reflect the inclusion of the "at will" restriction later stated in the RFC.  While Defendant also argues that Plaintiff ought to have raised the sit/stand issue at the hearing, *Id.,* Plaintiff could not have foreseen that the ALJ would impose a more restrictive limitation in the RFC than in the hypothetical question.  If the ALJ believed that Plaintiff required a sit/stand at will restriction, his failure to include it in the hypothetical question invalidates the VE's job findings. *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 ( E.D. Mich. 2003)(Roberts, J.)(job findings made in

-13-

response to an incomplete set of limitations, do not constitute substantial evidence). Because Defendant has not met its burden at Step Five of the sequential analysis, the case must be remanded.

### B.   The Mental Impairments

Plaintiff argues briefly that the hypothetical limitations to the ALJ did not account for his moderate deficiencies in concentration, persistence, and pace. *Plaintiff's Brief* at 13-14.  Citing *Ealy v. Commissioner of Social Security,* 594 F.3d 504 (6th Cir. 2010), he contends, in effect, that the hypothetical question ought to have included the limitation of being "off task" more than 20 percent of the workday due to the "inability to maintain attention, concentration or pace" *Plaintiff's Brief* at 13 (citing Tr. 510).

Substantial evidence supports the finding that Plaintiff's psychological limitations would not take him off task for 20 percent of the workday.  Both treating and consultive examination notes state that Plaintiff did not experience trouble concentrating (Tr. 321, 488). Treating records stating that Plaintiff was able to hold two jobs as of July, 2009 also undermines the conclusion that he would be off task for 20 percent of the workday (Tr. 375). The ALJ was not required to include unsubstantiated claims in the hypothetical question. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994).

The hypothetical question was nonetheless insufficient to address Plaintiff's relevant mental limitations.  To be sure,  the ALJ was not required to accept Plaintiff's contention that he would be off task 20 percent of the workday.  However, having found that Plaintiff experienced moderate deficiencies in concentration, persistence, and pace ("CPP") , the ALJ

-14-

was required to account for these limitations in questioning the VE (Tr. 16). *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005)(Friedman, J.); *Ealy v. Commissioner,* 594 F.3d 504, 516 (6th Cir.2010) 20 CFR § 416.920a (3)(4). The ALJ's only reference to Plaintiff's CPP was to limit him to "unskilled" work (Tr. 510).

There is some divergence of opinion in this district and elsewhere as to what hypothetical question modifiers sufficiently account for moderate deficiencies in CPP. "[U]nskilled work," or "simple work" are generally insufficient to account for moderate deficiencies in CPP. *Edwards* at 931; *Ealy,* at 516 ("simple repetitive" not sufficient); *Sutherlin v. Commissioner of Social Sec.,* 2011 WL 500212, *3 (E.D. Mich. February 8, 2011)(limitation of "one to two step tasks" adequately addresses moderate limitations in CPP); *Lewicki v. Commissioner of Social Security*, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010)(the modifiers of "simple routine work" accounted for Plaintiff's moderate deficiencies in CPP)). However, the Court is unaware of any instance where the hypothetical limitation of "unskilled work," with nothing more, accounts for such limitations. Notably, the RFC includes the modifier of "simple tasks," which was *not* included in the hypothetical question, but omits the term "unskilled" (Tr. 16, 510).

Although not raised by Plaintiff, the administrative opinion is muddied by additional inconsistencies. While the ALJ found that Plaintiff experienced only mild limitations in activities of daily living and social functioning (Tr. 15), he noted at a later point in the opinion that he gave "great weight" to Dr. Blake's June, 2010 non-examining assessment (Tr. 18-19, 343), which included the finding that Plaintiff experienced *moderate* deficiencies in

-15-

daily living activities and social functioning (Tr. 18-19).  Given the contradiction between the ALJ's earlier finding and Dr. Blake's conclusions, it is unclear whether the ALJ intended to adopt Dr. Blake's findings in full or only his conclusion that Plaintiff could perform "simple and unskilled work" (Tr. 19).

In any event, the discrepancy requires remand for further clarification.  First, even assuming that  the conclusion of "simple and unskilled" was sufficient to account for Plaintiff's moderate deficiencies in CPP, the sole modifier of "unskilled" in the hypothetical question did not include Dr. Blake's conclusion regarding social functioning.  Second, Dr. Blake's finding that Plaintiff could perform "simple and unskilled" work does not imply that he could do *all* simple and unskilled work or eliminate the need for the ALJ to identify and address the workplace impact of Plaintiff's discrete social, functional, and/or concentrational limitations.  The ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration,* 55 Fed.Appx. 333,  339, 2003 WL 236419, *5 (6th Cir. January 30, 2003); *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995).  While the ALJ provided a thorough discussion of the evidence, key contradictions between the administrative opinion and the hypothetical question and conflicting findings within the opinion require clarification.

In closing, I note that the above discussed errors, while critical, do not suggest that Plaintiff is automatically entitled to benefits.  Upon remand, the ALJ may or may not find that substantial evidence supports a non-disability finding.  Accordingly,  the case should be

remanded for further proceedings consistent with the findings in both sections of the analysis.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. #14] be DENIED, and that Plaintiff's Motion for Summary Judgment [Doc. #9] be GRANTED to the extent that the case be remanded for further administrative proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                   **s/ R. Steven Whalen**
                                   R. STEVEN WHALEN
                                   UNITED STATES MAGISTRATE JUDGE
Date: January 23, 2013


                          CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 23, 2013.

                                   s/Johnetta M. Curry-Williams
                                   Case Manager

-18-